IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHASE CORBIN COLLINS,

      Plaintiff,

  v.           CASE NO. 11-3151-SAC

CORRECT CARE SOLUTIONS, et al.,

      Defendants.

**O R D E R**

  This matter comes before the court on a complaint seeking relief under 42 U.S.C. § 1983, filed pro se by a prisoner incarcerated in a Kansas correctional facility in El Dorado, Kansas (EDCF). Also before the court is plaintiff's motion for leave to proceed in forma pauperis under 28 U.S.C. § 1915.

**In Forma Pauperis Motion, 28 U.S.C. § 1915**

  Plaintiff must pay the full $350.00 filing fee in this civil action. *See* 28 U.S.C. § 1915(b)(1)(prisoner bringing a civil action or appeal in forma pauperis is required to pay the full filing fee). If granted leave to proceed in forma pauperis, plaintiff is entitled to pay this filing fee over time, as provided by payment of an initial partial filing fee to be assessed by the court under 28 U.S.C. § 1915(b)(1) and by periodic payments from plaintiff's inmate trust fund account as authorized in 28 U.S.C. § 1915(b)(2). Pursuant to 28 U.S.C. § 1915(b)(1), the court is required to assess an initial partial filing fee of twenty percent of the greater of the average monthly deposits or average monthly balance in the prisoner's account for the six months immediately preceding the date of filing of a civil action.

Having considered the financial records provided by plaintiff, the court finds no initial partial filing fee may be imposed at this time due to plaintiff's limited resources, and grants plaintiff leave to proceed in forma pauperis.[1]  *See* 28 U.S.C. § 1915(b)(4)(where inmate has no means to pay initial partial filing fee, prisoner is not to be prohibited from bringing a civil action).  Plaintiff remains obligated to pay the full $350.00 district court filing fee in this civil action, through payments from his inmate trust fund account as authorized by 28 U.S.C. § 1915(b)(2).

**Initial Review of the Complaint, 28 U.S.C. § 1915A**

A federal court must conduct an initial screening of any action in which a prisoner seeks relief from a governmental entity or an officer or employee of such an entity.  *See* 28 U.S.C. § 1915A(a).  In conducting the screening, the court must identify any viable claim and must dismiss any part of the action which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief.  *See*

---

[1] Plaintiff's litigation history in this court discloses that plaintiff has filed previous complaints under the name Alan Ray Howard, Jr., with the same prison identification number (KDOC #76216) for all his filings, and that the court summarily dismissed three of these complaints as stating no claim for relief.  *See Howard v. Everhart*, Case No. 03-3414-GTV; *Collins v. Cline*, Case No. 08-3238-SAC; and *Collins v. Jordan*, Case No. 10-3109-SAC.  Thus plaintiff is now subject to the "3-strike" provision in 28 U.S.C. § 1915(g), which prevents a prisoner from proceeding in forma pauperis in bringing a civil action or appeal if "on 3 or more prior occasions, while incarcerated or detained in any facility, [the prisoner] brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."

However, when plaintiff filed his complaint in the instant matter, he had not yet acquired a third "strike" because his appeal from the dismissal of his complaint in Case No. 10-3109-SAC was still pending.  *See Jennings v. Natrona County Detention Center Medical Facility*, 175 F.3d 775, 780-81 (10th Cir.1999)("A district court dismissal under 28 U.S.C. § 1915(e)(2)(B) does not count as a strike until after the litigant has exhausted or waived his opportunity to appeal.")  Thus plaintiff was not yet subject to the "3-strike" provision in § 1915(g).  Plaintiff is advised, however, that any future complaint or appeal he files in federal court while he is a prisoner will be subject to § 1915(g), and will require plaintiff to pay the full district or appellate court filing fee absent a showing that plaintiff "is under imminent danger of serious physical injury."

28 U.S.C. § 1915A(b).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). A plaintiff must also provide facts to establish each defendant's personal participation in the alleged deprivation of plaintiff's constitutional rights. *Jenkins v. Wood*, 81 F.3d 988, 994-95 (10th Cir.1996). Although a pro se litigant's pleadings are to be liberally construed, *Erickson v. Pardus*, 551 U.S. 89 (2007), plaintiff retains the burden of alleging "enough facts to state a claim to relief that is *plausible* on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991).

Additionally, a prisoner is required to fully exhaust administrative remedies before bringing a lawsuit for violation of his federally protected rights concerning the conditions of the prisoner's confinement. *See* 42 U.S.C. § 1997e(a)("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

A prisoner's full exhaustion of administrative remedies requires the prisoner's proper compliance with all steps laid out in the prison system's grievance procedures. *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir.2010)(citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). While a prisoner's failure to exhaust administrative remedies is an affirmative defense, not a pleading requirement the prisoner must anticipate in his complaint, *Jones v. Bock,* 549 U.S. 199, 212–13 (2007), a court may still dismiss a complaint sua sponte if the prisoner's failure to exhaust is clear from the face of the complaint. *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir.2007).

Having reviewed the form complaint and numerous attached exhibits, the court liberally construes this pro se pleading as identifying six claims,[2] and finds summary dismissal of the complaint appears warranted for the following reasons.

*Failure to Exhaust Administrative Remedies*

The court first finds the complaint and exhibits provided supports dismissal of the complaint based on plaintiff's failure to fully exhaust administrative remedies on any of his claims.

Plaintiff documents numerous healthcare requests ("sick calls"), informal inmate requests, and letters to staff, but only single administrative grievances on four of his six claims. The dates on those grievances and the responses by the warden or health administrator are close enough to the filing date of plaintiff's complaint to plainly question whether plaintiff had sufficient time to complete the prison grievance procedure by filing appeals to the KDOC Secretary. *See Little*, 607 F.3d at 1249. Additionally, the

---

[2] Three claims are set forth in the 8 page form complaint. It appears three additional claims are identified on pages 50-53 in the 75 pages of attached exhibits.

grievance plaintiff submitted regarding medical care for his back pain was answered through an interdepartmental memo from the health care administrator, with neither the grievance nor that response bearing a grievance number for purposes of appeal to the warden and Secretary within the formal grievance procedure.

As for plaintiff's remaining two claims, nothing in the complaint or exhibits even suggests that plaintiff pursued administrative review of error he now alleges. And notably, in one of those claims plaintiff is challenging a policy dated only two weeks prior to plaintiff's filing of the instant complaint.

Given plaintiff's reliance on letters submitted outside the formal grievance procedure, and apparent failure to properly and fully exhaust administrative remedies prior to seeking relief in federal court, the complaint is subject to being dismissed without prejudice pursuant to 42 U.S.C. § 1997e(a).

### *No Claim for Relief Under § 1983*

The court further finds, however, that plaintiff's claims are subject to being summarily dismissed pursuant to 42 U.S.C. § 1997e(c)(2) notwithstanding plaintiff's failure to first exhaust administrative remedies. *See* 42 U.S.C. § 1997e(c)(2)("In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies.").

#### **Medical and Dental Claims**

Four of plaintiff's claims involve the alleged wrongful denial of his requests for specific medical and dental treatment.

Plaintiff first claims his persistent back pain is only being treated with pain medication which is not effective, and that his requests for diagnostic testing to determine the cause of his pain and curative treatment are denied.  Second, plaintiff states that he is denied treatment for Gender Identity Disorder (GID).  Third, plaintiff complains that he should have been provided a partial dental plate at no cost.  And fourth, plaintiff contends a prison policy establishing an alternative protocol for inmate complaints of chest pain unlawfully puts his life at risk.

A viable claim under the Eighth Amendment is stated if a prisoner alleges a sufficient factual and legal basis for plausibly finding that prison officials demonstrated "deliberate indifference to [the] prisoner's serious illness of injury," or that prion officials "have, with deliberate indifference," involuntarily exposed [the] prisoner to conditions "that pose an unreasonable risk of serious damage to [the prisoner's] future health. *Helling v. McKinney,* 509 U.S. 25, 35 (1993); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).  The "deliberate indifference" standard has both an objective and subjective component that each must be satisfied.  *See Farmer v. Brennan,* 511 U.S. 825, 834 (1994).

The "objective component" is met "if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Callahan v. Poppell,* 471 F.3d 1155, 1159 (10th Cir.2006). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is obvious that even a lay person would easily recognized the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir.1980)(quotation omitted).

The subjective component is met if the defendant "knew [the plaintiff-prisoner] faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. This component requires an "inquiry into a prison official's state of mind." *Id*. at 838.

- ***Back Pain***

Plaintiff's exhibits clearly demonstrate that prison officials are monitoring and treating plaintiff's medical concerns, including his persistent back pain. Plaintiff's disagreement with the pain management treatment being provided, and his demand instead for greater diagnostic testing and curative treatment, are insufficient to state a cognizable Eighth Amendment claim of deliberate indifference against any defendant. *See Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 811 (10th Cir.1999)("a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation"). *See also Estelle*, 429 U.S. at 107 ("[T]he question whether an x-ray-or additional diagnostic techniques or forms of treatment-is indicated is a classic example of a matter for medical judgment. A medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment."). Plaintiff's allegations thus fail to provide a factual basis for plausibly finding that any defendant acted with deliberate disregard to plaintiff's back pain.

- ***Gender Identity Disorder***

Plaintiff states that he was diagnosed with GID when he was evaluated by mental health professionals for purposes of sexual violent predator assessment and treatment.[3] Plaintiff complains that

---

[3] Plaintiff documents mental health assessments at Larned State Hospital in

this GID diagnosis was not included in his file when plaintiff's medical condition was assessed upon his entry to KDOC custody in 2008, and that his requests since 2009 for initiation of hormone treatment and eventual sex reassignment surgery have been denied pursuant to a prison policy disallowing hormone treatment unless such treatment was prescribed or had been initiated prior to the prisoner's incarceration. Plaintiff contends he is being denied adequate treatment for a medical condition that has been diagnosed or in obvious need of treatment, and seeks a court order for evaluation by an outside specialist to resolve plaintiff's GID diagnosis, and to require KDOC to initiate and provide treatment for this medical condition.

Assuming that plaintiff's gender dyshphoria constitutes a serious medical condition satisfying the objective component of an Eighth Amendment claim, the court finds the complaint sets forth no factual basis for plausibly establishing that any defendant in this case acted with deliberate indifference in denying plaintiff's specific request for hormone therapy. *See e.g. Supre v. Ricketts*, 792 F.2d 958, 963 (10th Cir.1986)(where hormone treatment was medically controversial, prison officials had no constitutional requirement to administer estrogen or provide any other particular treatment). While the treatment plaintiff requests might be appropriate for GID, it is plain that such treatment was neither mandated under the circumstances nor ever prescribed. Accordingly, the decision to deny plaintiff's request does not establish a claim of constitutional significance for the purpose of seeking relief under § 1983. *See e.g., Qz'etax v. Ortiz*, 170 Fed.Appx. 551 (10th

---

2006, 2007, and 2008, all referencing GID as one of plaintiff's AXIS I mental disorders. *See* Diagnostic and Statistical Manual of Mental Disorders (a diagnostic system for mental disorders).

Cir.2006)(unpublished(transsexual prisoner's difference in opinion regarding proper course of medical treatment for gender identity disorder was insufficient to show that prison officials were deliberately indifferent to prisoner's serious medical need).

   - **_Dental Plate Charge_**

Plaintiff complains that he was assessed a charge for a partial dental plate because he had available assets, and states the assistant warden would not authorize an exception to the prison policy that disallowed use of outside funds to pay for this device.  Although the complaint requests no specific relief on this claim, plaintiff argues the partial plate should have been provided without cost because the State is responsible for his medical and dental care, and appears to suggest the State is responsible for this cost because his tooth was broken by a state employee during a basketball game at a state mental health facility prior to plaintiff's incarceration.

The Tenth Circuit Court of Appeals recently observed that, "[a]lthough a state must provide inmates with basic medical care, we are not aware of any authority suggesting such care must be provided free of charge with respect to prisoners who have the ability to pay." _Tijerina v. Patterson_, 2013 WL 164272 (10th Cir.2013)(citation omitted)(unpublished).  Nor are plaintiff's allegations of being charged for a partial dental plate sufficient to satisfy the objective and subjective showings required for presenting a cognizable claim that any defendant acted with "deliberate indifference" to a serious medical need of plaintiff.

   - **_Alternative Protocol_**

Plaintiff broadly states that prison officials instituted an "alternative protocol" for dealing with inmates who frequently

complain of chest pains without any resulting indication that medical intervention was needed. For such inmates, the "alternative protocol" allows the officer in charge of the cellhouse to first assess whether to call medical staff. Plaintiff cites his fear that a heart attack or serious condition will be missed by this nonmedical staff member, with potentially fatal consequences to the prisoner. Other than implying he would like this "alternative protocol" to be declared unconstitutional, plaintiff identifies no specific relief on this claim.

Even assuming plaintiff's bare assessment that given his history of medical complaints the "alternative protocol" would be applied to his future complaints of chest pain, the court finds any claim of deliberate indifference by an appropriate defendant named in this action is speculative at best, and wholly insufficient to state a cognizable claim for the purpose of proceeding under § 1983. *See Bell Atlantic,* 550 U.S. at 555 (A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level.").

**First Amendment Claim**

As a fifth claim, plaintiff contends a prison policy restricting his receipt of religious publications while in disciplinary segregation violates his rights under the First Amendment. Plaintiff's factual basis for this claim is slight at best. The grievance he submitted listed seven publications he requested while in disciplinary segregation, and the administrative response stated that none were allowed. The warden's response further indicated that one personal publication – the prisoner's primary religious text –

was allowed while the prisoner was in disciplinary segregation, and that the loan of any publication to an inmate was at the discretion of the lending entity. Once again, plaintiff identifies no specific relief being sought on this claim.

Although a prisoner retains the First Amendment right to religious freedom while incarcerated, prison officials may place certain restrictions on the exercise of that right in order to advance "valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). "[C]ourts are not to substitute their judgment on matters of institutional administration for the determinations made by prison officials, even when First Amendment claims have been made." *Kikumura v. Hurley*, 242 F.3d 950, 956 (10th Cir.2001).

To sufficiently allege a constitutional violation based on a free exercise claim, a prisoner-plaintiff must first adequately show the prison regulation "substantially burdened [his] sincerely-held religious beliefs." *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir.2007). Accordingly, the court must first examine "whether the plaintiff's beliefs are religious in nature, and whether those religious beliefs are sincerely held." *Id*. at 1218-19 (internal quotation marks and citation omitted).

In the present case, plaintiff identifies no such impairment of any sincerely held religious belief. Finding no factual basis to plausibly establish the temporary restriction on plaintiff receiving religious publications while in disciplinary segregation violated plaintiff's constitutional rights, this First Amendment claim is

subject to being summarily dismissed.[4]

**Privacy Claim**

Plaintiff's final claim is that a recent prison policy prohibiting prisoners from covering their cell door windows, and subjecting non-complying prisoners to disciplinary action, violates his right to privacy. The complaint identifies no specific relief being requested on this claim, other than an implied request that the policy be deemed unconstitutional.

Prisoners have no reasonable expectation of privacy in their prison cells, *Hudson v. Palmer*, 468 U.S. 517 (1984), but it is recognized they retain a limited constitutional right to bodily privacy, particularly as to searches viewed or conducted by members of the opposite sex. *Hayes v. Marriott*, 70 F.3d 1144, 1146 (10th Cir.1995). An inmate's constitutional rights may be violated when guards of the opposite sex regularly observe the inmate engaged in personal activities, such as dressing, showering and using the toilet. *See Cumbey v. Meachum*, 684 F.2d 712, 714 (10th Cir.1982). Alleged infringement of this constitutional right must be analyzed by courts with due regard for the requirements of prison administration, giving great deference to prison officials' decisions concerning the management of correctional facilities. *Id.*

In this case plaintiff simply contends that he is entitled to cover his cell window when going to the bathroom, and that he should

---

[4] Likewise, to the extent the complaint and/or exhibits briefly reference a temporary restriction on plaintiff's receipt of non-religious mail during his disciplinary segregation, this bare reference alone is insufficient to assert a colorable First Amendment claim. *See also Procunier v. Martinez,* 416 U.S. 396, 404–05 (1974)(federal courts typically "have adopted a broad hands-off attitude toward problems of prison administration" that springs from the substantial hurdles facing prison administrators in carrying out their duties of "maintaining internal order and discipline, ... securing their institutions against unauthorized access or escape, and ... [of] rehabilitating").

not be subjected to discipline for doing so. Plaintiff fails to allege how frequently he is observed through the uncovered cell window by guards of either sex during such activities, however, which "is an important factor in assessing the constitutionality of prison practices." *Hayes*, 70 F.3d at 1147. Moreover, plaintiff's privacy claim is subject to Eighth Amendment scrutiny for a "sufficiently serious" deprivation to which prison officials acted with "deliberate indifference." *Adkins v. Rodriguez*, 59 F.3d 1034, 1037 (10th Cir.1995). Plaintiff's bare allegations in this case are insufficient to plausibly establish a claim of constitutional significance, thus this claim is subject to being summarily dismissed as stating no claim for relief under § 1983.

### Notice and Show Cause Order to Plaintiff

The court thus directs plaintiff to show cause why the complaint should not be dismissed without prejudice for nonexhaustion of administrative remedies on all claims, *see* 42 U.S.C. § 1997e(a), or as stating no claim upon which relief can be granted under 42 U.S.C. § 1983. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915A(b) and § 1915(e)(2)(B)(ii). The failure to file a timely response may result in the complaint being dismissed without further prior notice.

IT IS THEREFORE ORDERED that plaintiff's motion for leave to proceed in forma pauperis (Doc. 2) is granted, with payment of the $350.00 district court filing fee to proceed as authorized by 28 U.S.C. § 1915(b)(2).

IT IS FURTHER ORDERED that plaintiff is granted twenty (20) days to show cause why the complaint should not be summarily dismissed for the reasons stated by the court.

A copy of this order shall be mailed to plaintiff and to the

Centralized Inmate Banking office for the Kansas Department of Corrections.

**IT IS SO ORDERED.**

DATED:  This 6th day of June 2013 at Topeka, Kansas.

                                    s/ Sam A. Crow
                                    SAM A. CROW
                                    U.S. Senior District Judge